The next case this morning is 523-1328, People v. Jarrett. Arguing for the appellant is Emily Boyk. Arguing for the appellee is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. We've got Ms. Boyk back from earlier. Thank you for your patience. We had several cases set on today's oral docket. I guess, Ms. Boyk, are you ready to proceed? I am, Your Honor. Then go right ahead. Thank you. Good morning again, Your Honors, counsel, and may it please the court. Again, my name is Emily Boyk with the Office of the State Appellate Defender, and I represent Jatrevius Jarrett in this appeal. Jatrevius Jarrett was only five months past his 18th birthday when he committed this offense. Six months earlier, he was homeless and recently diagnosed with conduct disorder and cannabis use disorder. Seven months earlier, Jatrevius' father passed away after a long illness. One year earlier, Jatrevius was two grades behind in an alternative school. And on the day of Ephraim Jones' murder, Jatrevius, who had just been violently attacked in front of his newborn child, was encouraged by his mother to commit this offense. However, the sentencing court did not meaningfully consider these mitigating circumstances, nor did it consider the neuroscience research Jatrevius provided, which shows that an 18-year-old under his circumstances is more similar to a juvenile than to an adult. Ultimately, the court sentenced Jatrevius to 50 years in prison because it incorrectly believed that it was bound to impose a de facto life sentence under the statute. Jatrevius' 50-year sentence is excessive and violates the Proportionate Penalties Clause of the Illinois Constitution as applied to him. This court should therefore either reduce his sentence or remand for a new sentencing hearing in which the circuit court can exercise its discretion to sentence him below the 45-year minimum. First, Jatrevius' 50-year sentence is a de facto life sentence. Because Jatrevius faced a minimum sentence of 45 years, he was subject to a mandatory de facto life sentence under buffer. As this court is aware, and as discussed in the briefs, the issue of whether Illinois' youth parole statute remedies an otherwise de facto life sentence is currently pending before the Illinois Supreme Court in People v. Spencer, which is set for argument in the March term. But as discussed in our reply, the youth parole statute does not, in fact, cure Jatrevius' otherwise unconstitutional sentence because it provides for only a remote possibility of release, not a meaningful opportunity for release as required by our Constitution. Counsel, if I have my notes here, this issue has been addressed by every court, but in our People v. Beck case, correct? A related issue was addressed in Beck, Your Honor. There are two distinguished ways that Beck is different, though. First, Beck was solely about challenging under the Eighth Amendment. It was not a proportionate penalties clause case. So Beck did not address whether the youth parole statute remedies a de facto life sentence under the proportionate penalties clause, which is what Jatrevius is raising here. And also, Beck concerned a different provision of the parole statute for non-homicide offenses, which provides more frequent and earlier parole opportunities. So Beck is similar, but it's not directly on point to the specific challenge that Jatrevius is bringing here. Because Jatrevius was subject to a mandatory de facto life sentence, trial counsel raised a proportionate penalties clause challenge at the time of his sentencing. To support his challenge, counsel attached 55 pages of Jatrevius' medical records from Heritage Behavioral Health and a 65-page white paper detailing the neuroscience research regarding the brain development of late adolescents aged 18 to 21. Counsel argued that along with the PSI, these documents established that Jatrevius was more like a juvenile than an adult and was entitled to Miller's protections. However, the court incorrectly believed that it lacked discretion to sentence Jatrevius as a juvenile. The court repeatedly made clear that it believed it had no discretion to consider whether Jatrevius was more like a juvenile than an adult. First, after setting the case for a sentencing hearing, the court mentioned to the parties the possibility of a proportionate penalties clause challenge at sentencing. In doing so, the court noted that, quote, the statutes are pretty clear that the case law and limitations only apply to individuals who are under 18 years of age. While acknowledging the first district's decision in Harris, the court then remarked that, quote, there's a number of other cases that say once you're 18, all bets are off. The other rules don't apply. Then at the sentencing hearing, the court reiterated this incorrect belief that because Jatrevius was 18, it lacked discretion to consider his challenge. The court stated that Illinois courts had created a, quote, bright line rule that once you're 18, the court is bound to apply the adult sentencing factors. The court then repeated this erroneous belief a third time at the hearing on the motion to reconsider. Again, the court stated that there was a bright line rule that it could not apply the juvenile sentencing factors to an 18-year-old defendant. This is simply not the law. As the state has agreed, the Illinois Supreme Court has made it clear that an 18-year-old like Jatrevius can make a showing that he is entitled to be sentenced according to the juvenile sentencing factors. Had the court understood the law and actually evaluated the documents provided by counsel, it would have found that Jatrevius made the necessary showing that as applied to him, this mandatory de facto life sentence violates the proportionate penalties clause. The medical records from Heritage show that six months before this Jatrevius was diagnosed by a qualified mental health professional with conduct disorder, cannabis use disorder, and issues with impulse control and emotional regulation. These diagnoses are directly in line with the neuroscience research presented by counsel showing that adolescents like Jatrevius struggle with impulsivity and self-control in certain contexts because the areas of the brain related to executive functioning are still developing. Both the PSI and the Heritage records also show that Jatrevius was attending an alternative high school and was two grades behind in his education. These educational delays further show that Jatrevius' brain was not equivalent to that of a typical adult. The records also show that Jatrevius was recently homeless and had lost his father only a few months before this offense. These are both factors which the white paper explains can influence brain development around emotional regulation and impulsivity. And critically, the applicability of this neuroscience research to Jatrevius is very apparent when considering the undisputed facts of this case. Less than 30 minutes prior to this offense, Jatrevius was violently beaten and pepper sprayed by several of his peers. After leaving the area of the attack, Jatrevius' own mother then drove him back to the apartment complex with a weapon and encouraged him to confront the person they believed had orchestrated the attack. When Jatrevius arrived with his mother and his girlfriend, he was then greeted by three adult men, including his uncle and his cousin, who even further encouraged the attack against Ephraim Jones and started yelling at Ephraim Jones. It was in this commotion, with this encouragement from four adults, that Jatrevius fired the weapon. Clearly, Jatrevius was exposed to an extreme amount of stress, heightened emotions, and pressure to commit this offense from both his peers and all of the adult authority figures around him. The white paper makes clear that these are the exact circumstances under which an 18-year-old's brain will respond most like a juvenile. Thus, the record is sufficiently developed to demonstrate that Jatrevius' specific characteristics were so like those of a juvenile that he is entitled to Miller's protections. However, if your honors find that the record here is insufficiently developed to consider Jatrevius' constitutional challenge, then counsel was ineffective for failing to develop the record for that purpose. All as-applied constitutional challenges are, of course, by definition dependent on the specific facts and circumstances of the person raising the challenge. So if the record was not sufficiently developed in this case, then counsel's failure to do so ensured that the challenge that counsel himself raised would fail. But that would not keep the defendant from filing a post-conviction petition later on, correct? That's correct, Jatrevius could file a post-conviction to make a challenge later on with additional evidence. In my remaining minute or so, I did also want to just briefly address the excessive sentencing argument. Alternatively, if your honors do not find that Jatrevius' sentence violates the proportionate penalties clause, his 50-year sentence is still excessive and constituted an abuse of the court's discretion. The court abused its discretion when it conflated the mitigating sentencing factor of strong provocation with the higher standard for serious provocation under the second-degree murder statute. The sentencing statute mandates that the court consider as a mitigating factor whether the defendant acted under a strong provocation. In contrast, a defendant is guilty of second-degree murder if, at the time of the killing, he was acting under a sudden and intense passion resulting from serious provocation by the victim. Strong provocation as a mitigating factor encompasses a wider range of conduct than that defined as serious provocation under the second-degree murder statute. However, the court here conflated the two standards when it found that the mitigating factor of strong provocation did not apply because the provocation, quote, certainly was not from this victim and it certainly did not rise to the level to excuse the defendant's conduct. This is almost verbatim the standard for second-degree murder, not the standard for the sentencing factor of strong provocation. But the minimum sentence for murder is 20 years, 20 to 60 is the range, and then so in this case that would have been 25 for the murder and then the tack-on of 25 for using the firearm. So it is barely above the minimum, correct? That's correct, Your Honors. It is five years above the minimum here would have been 45 and he received 50 years. But we still argue that those five years are excessive considering all of the factors I've discussed and Detrivious's age. So seeing my time has expired, just again, Detrivious's sentence is an excessive de facto life sentence that violates the proportionate penalties clause and we request that this court either reduce his sentence or remand for a new sentencing hearing. Thank you. Thank you, counsel. Justice Schoeller, Justice Morty, have any questions before we move on? No questions. All right, and obviously you'll have your rebuttal time. Counsel, go ahead and proceed with your argument. May it please the court. Good morning. My name is Jessica Theodoratos and I represent the people. Defendant's 50-year sentence does not violate the proportionate penalties clause. While a question of law is to review de novo, there is also a presumption that a statute is constitutional. To overcome this presumption, defendant must clearly establish that the relevant sentencing statutes were unconstitutional as applied to him. Defendant fails to overcome this presumption for three reasons. First, he did not receive a de facto life sentence. Second, the record is not sufficiently developed. And third, the trial court properly considered his youth in sentencing him. First, the Illinois parole statute for youthful offenders remedies a de facto life sentence. As cited in our brief, there is an body of precedent that supports this proposition. A de facto life sentence is one that does not afford a defendant a meaningful opportunity for release after 40 years. The operative question here is whether the parole statute for youthful offenders provides a meaningful opportunity for release. And it certainly does, because the statute requires the parole board to consider the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration. The parole statute provides that young adults... Counsel, would you agree that the Spencer case mentioned by the appellant is going to control that issue? Absolutely, your honor. Okay, you may continue. Young adults like defendant who commit first degree murder receive additional protections by providing them an opportunity for parole at 20 and 30 years. The parole statute provides that their youth and any growth and maturity be taken into account in the decision of whether or not to grant them parole. This court held in People v. Beck that the parole statute does remedy a de facto life sentence because it affords a defendant a meaningful opportunity for release based on his maturity and rehabilitation. To quote this court in Beck, that is all that is required of the Eighth Amendment and Illinois precedent. Simply, under the Illinois parole statute, defendant did not receive a de facto life sentence. Turning to the second point, the record here is insufficient for this court to engage in a meaningful consideration of the trial court's ruling. As our Supreme Court counseled in People v. Harris, defendant's as-applied challenge is better raised in a post-conviction proceeding. If anything, nearly all of the characteristics regarding defendant found in the record show that he was more like an adult than a juvenile. Defendant denied having any learning disabilities or mental health conditions. He was a father and was involved in his child's life. He set a number of goals for himself, including he was working towards his high school diploma. He was employed, he smoked cannabis daily, and he had a lengthy criminal history. Ultimately, the record indicates the defendant was operating on some level of maturity, but because there is very little specific information about this defendant's mental abilities being like that of a juvenile, it would be rational to conclude that the record is inconclusive regarding defendant's maturity level. Defendant points to the Heritage Behavioral Health Center reports as support for the arguments regarding his mental state, but a review of those reports provide that over 52 pages are blank or document brief phone calls defendant had with a therapist. There's only three pages that provide information about defendant's mental state, aggression, and diagnoses. There is no adequate basis on which to make a clear finding of facts. As such, the record is undeveloped for direct review and defendant's claim is better considered in a post-conviction proceeding. Defendant argues that if the record is not sufficiently developed, essentially defendant was automatically denied effective assistance counsel. But that argument misapprehends the fundamental difference between a sufficiency of the record analysis and an ineffective assistance analysis. The sufficiency of the record analysis focuses on what is missing from the record. In other words, was there enough evidence presented in the trial court for this court to engage in a meaningful review? But with an ineffective assistance analysis, defendant must make an affirmative showing based on the record that counsel's performance was deficient and prejudiced him. Defendant needs to show that there was a reasonable probability that the outcome would have been different. That is why post-conviction petitions often attach affidavits to support an ineffective assistance claim. Here, defendant cannot make an affirmative showing based on the record before this court. Third, even if the record is sufficiently developed, the trial court considered defendant's level of maturity in imposing its sentence. It went through quite a lengthy discussion regarding defendant's personal circumstances and complied with Miller factors in sentencing. Then the trial court sentenced defendant to a sentence that fell on the low end of the statutory range. Defendant cannot clearly establish a constitutional violation as was his argument. Regarding defendant's argument that his 50-year sentence for first-degree murder was excessive and an abuse of discretion is without merit. Here, defendant's 50-year sentence is presumptively valid because it fell on the lower end of the statutory range of 45 years to natural life. Defendant is unable to overcome this presumption of validity because the trial court considered all factors in aggravation and mitigation. The trial court's discussion about provocation being present in this case but ultimately not giving it much weight because the trial court found defendant's provocation did not rise to the level to excuse defendant's conduct was proper. Provocation was not used as an improper factor in aggravation against defendant and the trial court properly decided not to give it much weight in mitigation. The trial court weighed the factors in aggravation and mitigation and fashioned a sentence to account for defendant's age, seriousness of the crime, and criminal history. The people respectfully ask this court to affirm the judgment of the court below. Are there any questions that I may answer this time? Justice Schell or Justice Moore, any questions? No questions. Thank you, counsel. Go right ahead, Ms. Boyk, with your rebuttal. Thank you, your honors. I want to touch on three points that counsel raised. First, regarding the counsel's argument that the record shows that Jatrevius was actually very mature and was actually more like an adult. The things that counsel points to are things like he had a child, that he had goals, that he was getting better during his juvenile probation. These are all signs that Jatrevius was actually more like a juvenile. The white paper and the neuroscience is clear that juveniles are most likely to rehabilitate when they are given structure and adult support. The fact that he has a very high likelihood of rehabilitation is actually proof that he is more like a juvenile. Also, the brain science is clear that the part of the brain that is still developing at 18 is the prefrontal cortex, which is not what is involved in calm, structured settings decision-making. The prefrontal cortex is underdeveloped in high stress, high influence, emotionally charged situations. That is where 18-year-olds' brains are most like juveniles, and that is the situation we're talking about here. That Jatrevius could have goals and succeed at a structured setting in a calm environment has no bearing on how his brain reacted in the moment here. Also, counsel mentioned that the court considered the Miller factors. That is just categorically not true. The court said that it was not considering the juvenile factors, that it was only considering the adult sentencing factors. The court did not at all consider the Miller factors, which would be the juvenile sentencing factors, because the court explicitly said it did not think those applied here because Jatrevius had turned 18, and therefore, he could only be sentenced under the adult sentencing factors. Finally, regarding the ineffective assistance of counsel issue, if the record was indeed not sufficiently developed, notably, the challenge here, this is a challenge that counsel brought. Counsel brought this challenge that if counsel ensured that Jatrevius could not succeed because the record was not developed, that is deficient performance, and that is prejudicial. And there's evidence in the record that trial counsel, if the court finds that the record here is insufficient, that there are things that trial counsel could have done. To the extent that the record here is insufficiently developed, it's because counsel did not adequately draw the court's attention to all of the relevant evidence in the record and failed to make arguments that sufficiently connected that evidence to the neuroscience. Notably, for example, counsel said at the beginning of the sentencing hearing that it was okay that the trial court had only read the four-page executive summary and not read the whole white paper. The court said it hadn't read the whole white paper and asked trial counsel if that was okay, and trial counsel said, yeah, that's okay. There were 61 more pages of that white paper that the court did not read, and trial counsel said was fine that he was recently homeless in the sentencing hearing, both of which are discussed in the heritage records. And while counsel referred to the white paper generally, again, it did not point out specific portions that apply to Jatrevius and did not really connect them to the evidence presented in the medical records and the PSI to a large extent. Again, we believe that there is enough in the record here, just looking at the records that exist, but to the extent that it's undeveloped, counsel did not fully develop those arguments. The information is in the record, but the arguments could have been further developed. So if there are no further questions, again, we ask that this court either remand Jatrevius for a new sentencing hearing or reduce his sentence. Thank you. Thank you, counsel. Justice Scholar or Justice Moore, any final questions? No, thank you. Questions? Well, counsel, thank you so much for your arguments. We will take the matter under advisement. We will issue an order in due course.